Thank You, Your Honor. May it please the court, Charles Cavanaugh from Mesner Reeves representing Chipotle Mexican Grill, Inc. and Chipotle Services, LLC. Ms. Cortez's miscarriage was an undeniably sad occurrence, but Chipotle recognized that and responded appropriately by immediately affording her 12 weeks of medical leave, an additional week of personal leave as that initial leave expired. Ms. Cortez's unfortunate circumstances do not overcome the fact that after a week-long trial, a jury unanimously concluded that Chipotle had not done anything wrong with respect to how it handled Ms. Cortez's unfortunate situation. Ms. Cortez's efforts to now invalidate the jury's verdict by manufacturing legal errors where none exist should be rejected. Before the trial, the district court properly denied Ms. Cortez her late motion to amend her complaint. And then at the trial, the correct claims were before the jury. The district court properly instructed the jury as to each of those claims and substantial evidence supports the jury's findings in favor of Chipotle on each of those claims. The jury's verdict should not be disturbed. I'd like to focus my argument on the two errors that the district court did make. One, in after trial, granting Ms. Cortez time to engage in the interactive process. And then on its error before trial in granting summary judgment in favor of Ms. Cortez on her claim for failure to produce personnel records. Time permitting, I'd also like to address Ms. Cortez's argument that the district court erred in denying her leave to amend her complaint. So that's raised on the other, the cross-appeal. Yes, Your Honor. Why don't you focus on your issues? Yes, Your Honor. Attorney first to the district court granted Ms. Cortez a new trial on the failure to engage claim based on the jury instructions. And the instruction that was given at trial was that Ms. Cortez, in order to prevail, must prove that she requested from Chipotle a reasonable accommodation. And that language that was given to the jury is very similar to the instruction that was jointly requested by the parties right before trial. So there's really any dispute that the instruction given was incorrect as far as it went. Dispute here is about whether the jury should have also been instructed about the situation described in 2 Cal Code Regs 11069B3, where an employer may have a duty to initiate an interactive process in response to an indication that further accommodation is necessary. So really the dispute boils down to the question of whether an indication is somehow different from and less than a request. But in her own answer reply brief, Ms. Cortez explains that that issue is actually irrelevant to the undisputed evidence that was presented at trial. At trial, it was undisputed that Chipotle, through its employee service center, called Ms. Cortez on December 8, 2016, and told her that if she needed an It was also undisputed that Ms. Cortez responded to that communication by requesting additional leave. So if there's no dispute here that Chipotle did initiate an interactive process in December 2016, and Ms. Cortez responded by making a request for additional leave, the question of whether the jury should have also been instructed about an employer's duty to initiate an process in response to an indication of a need for additional leave is purely academic. And the district court erred here in deciding that Ms. Cortez was entitled to a new trial on that basis, because the evidence was, at trial, was not relevant to the issue of whether or not she indicated a... Doesn't that simply mean that even if there was some error in the jury's instruction that the court thought that it had to give, it should have given, that really it was harmless? Yes, exactly, Your Honor. Exactly. Because it was undisputed that Ms. Cortez made a request. So even if, as an academic matter, maybe additional instruction would have been appropriate, it was actually irrelevant to the undisputed evidence. And that the harmless nature of the error is also shown by the jury's verdict. On the failure to engage claim, the jury decided, despite the fact that it was undisputed that she made a request for additional leave, the jury concluded that she did not make a request for reasonable accommodation. And as the district court explained in its new trial order, that finding can be reconciled by the fact that the jury must have meant that it found that the request was not reasonable, because there was no dispute that she made a request. So again, even if we had changed the question in the jury and verdict form, to asking if she made an indication of a need for leave, rather than whether she requested leave, the jury would have come out the same way because it's clear from the evidence that was presented, that its finding was based on the reasonableness, not the fact of whether it was a request versus an indication. The district court also erred because its interpretation that, or its finding that in its own mind, a request is somehow more concrete than an indication. You can only reach that conclusion if you assume that in drafting the regulation, the Fair Employment and Housing Commission exceeded its authority, because under the FEHA, the commission is authorized to interpret and implement and apply the statute, but it's not authorized to create new causes of action or to change the law. So the district courts should not have assumed that by using the word indicates in the regulation, the commission somehow meant something materially different than the legislature meant when it used the word request in the government. So what was the commission up to when they adopted Section 3 of the regulation? I don't believe that it meant anything materially different than what is laid out in government code 12940N, which is just the notion that you can only state a claim for failure to engage if you make a request. So that specific subparagraph is talking about a situation like we had here with Ms. Cortez, where an employee who is afforded leave, exhausts the statutorily protected leave, and then there's a question about whether or not the employer may have a duty to initiate an interactive process in response to an indication of a need for additional leave. And so I think it was just addressing that situation, but if we look at the words of 11069B3 themselves, it's only two sentences long and in back-to-back sentences, the commission uses the words indicates and requests synonymously to refer to the same thing, that the first sentence says that an employer may have a duty to initiate an interactive process in response to an indication of a need for additional leave, but then in the very next sentence says that an employer's offer to engage in an interactive process in response to a request for such leave does not violate other regulations regarding employee privacy. So even in the regulation itself, the commission uses indicates and requests synonymously. So there's no reason to assume that the commission meant anything different by indicates than it did by requests. So the district court's finding that it misinstructed the jury because it did not also give the indicates language was erroneous. The jury's verdict should be affirmed and the district court's new trial order should be reversed. You wanted to address the other issue that you appealed? Yes, Your Honor. So the second issue on the second error that we point to was the district court's in granting summary judgment in favor of Ms. Cortez on her claim for failure to produce personnel records. And there the district court found in its order that it was undisputed that Mr. Shattuck's maintained the two draft performance reviews in question. But the court went on to say that section 1198.5 of the labor code makes no distinction between records that the employer maintains and records that are maintained by Mr. Shattuck's. That conclusion is erroneous. Section 1198.5 is very clear that an employee has the right to inspect only records that are maintained by the employer. And the applicable law that we discuss in our appellate briefs, primarily the Martinez versus Combs case, explains how under the labor code, there's a distinction between an employer and an individual supervisor like Mr. Shattuck's. I don't understand how people are employed by a corporation. I don't understand your distinction. Every person who's in possession of records is an employee. I just want to be sure I understand what your argument is. He was an employee of a corporation. The corporation only acts through employees. So you seem to be saying that even though he's an employee of the corporation, there was no obligation to produce. I'm just trying to understand that argument since a corporation can only act through its employees. Yes, Your Honor. I agree. A corporation can only act through its employees, but not every act of every employee is an act of the employer. And the labor code is very clear that only an employer can be liable for violations under the labor code, not individuals like Mr. Shattuck's. I understand your point. Could I ask you one more question? What is exactly the prejudice that she suffered and what is the remedy? I should have looked this up myself. But what is the remedy that she's entitled to, even if the judge was right? Sure. Yes, Your Honor. Well, to answer your first question first, it's our position that there was no prejudice because the records were eventually produced in the course of discovery when Mr. Shattuck's was deposed because they had been in his possession, he brought them with him to his deposition. And so they were produced before discovery closed. Ms. Cortez had them available to her disposal. And ultimately this case had nothing to do with Ms. Cortez's performance. So those documents were entirely irrelevant to the issues that actually were at stake in trial. But under the labor code, the reason why this is problematic to a big employer like Chipotle is under the labor code, just the technical violation entitles Ms. Cortez, not only to statutory penalties, but also attorney's fees. So at this point, we would assume if that ruling stands, that her counsel will move for attorney's fees. We're not optimistic that that will be a modest request. And so there's a very real monetary component. And then there's also the practical consideration. If an employer like Chipotle is obligated in response to every request for personnel records to reach out to every one of their employees to see what records they may have that have not been sent into the corporate offices, that imposes a huge burden on an employer that is not contemplated by the statute. And the evidence here shows that... And why is that such a burden? Because... It's likely only to be the managers. Well, but the logic of the district court in saying that there's no distinction between something that Mr. Shattuck maintained and something that Chipotle as a corporate entity maintained didn't have any... There's still records maintained about the employee. But the court found that it was undisputed that they were maintained by Mr. Shattuck's. And so if these incomplete draft performance reviews that were undisputably only in his possession constitute the type of thing that an employer has an obligation to quickly go out, find and turn over at the expense of possible statutory penalties and attorney's fees, then there's no reason why that wouldn't extend to if Mr. Shattuck had written a handwritten note about Ms. Cortez's performance. If he had posted something on social media about her performance, if he had just texted a friend or another about her performance. Those circumstances aren't here. No, but there's no reason why... We're dealing with, apparently he was responsible for performing, for undertaking performance evaluations of her. Correct. There's no reason why the district court's argument would stop here though. And as a practical matter, the record shows that this was not a situation where Chipotle or Mr. Shattuck's were somehow trying to hide a personnel record. There's an email exchange in the record between Mr. Shattuck's, his supervisor and Chipotle's corporate offices, where he specifically explained, I have not turned in Ms. Cortez's 2015 performance review because I haven't given her it yet. Because she's been in New Mexico on an extended period of time dealing with her husband's health issues. So the record shows that ordinarily, of course, a performance review like this in the ordinary course would have been given to Ms. Cortez and submitted to Chipotle's corporate offices such that Chipotle would have maintained it and it would have been subject to the statute. But the specific circumstances relating to that particular document, Cortez's absence from the country, she never received the review and therefore Mr. Shattuck's never did turn it into corporate. And therefore it remained in his possession. And so it goes back to the finding found that these documents were in Mr. Shattuck's possession. And so it aired when it treated him as the employer because Martinez versus Combs explains how an individual supervisor like Mr. Shattuck's is not an employer. For not only should the grant of summary judgment in favor of Ms. Cortez be reversed, but summary judgment actually should have been entered in Chipotle's favor on that point because it was undisputed that the records were in Mr. Shattuck's possession and he was not the employer. Okay. Your time is up, but I'll give you a little bit of time for rebuttal because we're going to focus now on Ms. Cortez's appeal and responsive arguments to a counsel. It's just to dance. Okay, counsel, may I make just one observation? Let's say this is a Mr. Bechtol. Yes, your honor. So, you know, I know we're, um, you know, this is a virtual argument. I know people are at their homes or in their offices, but you know, in the future it would be best to at least, if you may have a tie and a shirt and whatnot, but you got to have on a jacket as well. That said, let's move on to your argument. Well, your honor, if I could respond to that. I honestly put one on this morning. Um, my jackets don't fit me anymore. Um, I didn't have one that I'm still, still fits. I do hope to get back in the gym soon, but, um, it was my thought this morning and that's why I did not do it. Uh, but good morning, your honors. May it please the court. Uh, first I'd like to respond to, to Chipotle's positions because, because, um, there's fundamental problems with them. First, with regards to the fair to engage claim, the issue here is not whether an employer must request a reasonable accommodation, it's what constitutes a request for a reasonable accommodation. So here, when the court ruled that the model instruction was an incomplete statement of the law, the court was correct. And the reason it was correct is because, uh, in 11069, as Chipotle correctly points out, it actually directly, uh, contemplates that there is some sort of request. Now, all of the, uh, case law that we actually cited stands for the proposition that the request is, is, is not a specific request for a reasonable accommodation as the court stated, and that the jury could have found that the request wasn't reasonable. The form of the request simply has to be an indication that an accommodation might be necessary. Now, that was, for example, the, the holding in Scotch. In Scotch, there was no specific request for a reasonable accommodation. There was simply a, a, uh, email saying, I have some issues that would have put the employer on notice that an accommodation might be necessary. Now here, the 11069B provisions are important because it gives the jury guidance on what would be a request in this case. Here, the, the 11069B expressly says, if an employee, uh, uh, exhausts leave and then provides some sort of indication that more leave is necessary, then that's a request for reasonable accommodation. Had the, the judge provided that instruction, here, the jury likely would have concluded that Ms., uh, Ms. Cortez did request a reasonable accommodation because those facts precisely meet this case. You know, here, uh, after no leave was granted, whether or not it was expired as a disputed issue, but about 12 weeks, uh, had elapsed. And once those 12 weeks have, uh, elapsed, she requested additional leave and that additional leave was actually granted and then rescinded. These facts indicate she did actually request the reasonable accommodation. And overall, the, the, the weight of the evidence, there's really no dispute that a, a, a request for a reasonable accommodation was made. But the jury instruction is particularly important here because this would have the jury in knowing that under these facts, she did make a request for a reasonable accommodation. Now, if I can turn to the, uh, um, personnel file issue, uh, Chipotle fundamentally misunderstands Martina's first poems. That case does not say a supervisor is not an employer who, who handles records. That case says that a agent is, is, is not someone who's an employer. Now here, Shaddix was not an agent. We know that because the court specifically found as much when they granted a motion for summary judgment in favor of Chipotle on her punitive damages claim. The only issue was whether or not Shaddix and some other employees were managing agents and the court said, no, we can't pursue that claim because they're not agents. Moreover, the Martinez case specifically says if the person's an employee, they are covered. Now, the issue in Martinez was, was a case where the real employer, uh, was discharged in bankruptcy. So the employees were going after agents of the company, um, and, and ultimately the court ruled against them. But the court specifically stated Plankett's are correct in that if Muno's employer rather than independent contractor, Muno's employers arguably would also have been Apeo's employees. And in that case, they would be, uh, uh, employers under the law. Here, here, uh, uh, Shaddix was an employee of, of, of Chipotle. It was Chipotle's responsibility to maintain these performance records. There's really no dispute that these aren't performance records and overall the personnel file. Well, counsel, can I, can I ask about that? Because it seems to me that these were, they weren't signed, right? Is that, is that right? Signed by Ms. Cortez? Or by Mr. Shaddix, I don't think. Were they signed by anybody? They weren't signed by, by, by, um, Ms. Cortez. I'm not sure if it was signed by Mr. Shaddix. I don't believe so. I don't remember they weren't signed. I, I, it, it almost seems like, um, these were sort of drafts that because of, as you heard your opposing counsel say, because of sort of the circumstances that were going on, it just, something interrupted the normal process. Um, and so I guess I'm not sure if, I understand that just, just because some employee happens to keep, uh, you know, an employee file in their own possession, that that would be problematic perhaps to say that, that they don't have to be turned over under California law. Um, what if they, is your position that, that drafts would have to be, you know, somebody was, you know, or took down a note, you know, and said, uh, so-and-so is being a particularly bad employee today, kind of for their own purposes, trying to figure out whether they want to report something there's barriers and that they just happen to have that note. Is that an employee record that needs to be turned over? I'm just trying to figure out where the line here is, because it's not as clean as, as if these were actual signed employment records or something. Well, I'd have two responses. First, the WellPoint case highlights that an employer can't avoid their responsibilities by just labeling it something else and keeping it somewhere else. So the idea isn't, they only have to produce the files that are in certain, you know, file that they keep. It's any document that fits within the category, they have the responsibility to produce. Now, I would probably agree that if we're just talking about notes from some employee that might deal with performance that the employer has no reason to know about, those likely wouldn't have to be produced. But these are performance reviews. It was Shadix's job to prepare the performance reviews and to submit them. He did perform the performance reviews. Chipotle's offices should have known they should have existed because it was his job to do it. So these are records that are maintained in the moment. I think I heard your opposing counsel say, say draft performance reviews. I don't, I don't, I'm trying to figure out if these were just drafts, you know, then I understand the point that just if they were, if they actually are the performance reviews, does it make a difference if they're just drafts? I guess would be the question. Well, I don't think under the law they do, but here the testimony was they were, they just weren't signed yet because Ms. Cortez was out of the country. So it wasn't just a, a, you know, random document or a draft that was sitting in his computer. It was a performance review that was actually prepared with the intention to have Ms. Cortez sign it, just didn't get signed yet. That's still a performance review under the statute. And it's a document that's regularly maintained by Chipotle and Chipotle should have known the document existed or at least could request it. And the fact that it wasn't actually in a certain file is completely irrelevant. The question is, was it a performance review? Last point I'd like to make on this is the statute actually does have an affirmative defense of impossibility. So if an employer fails to produce a document because it was impossible because they had no clue it existed or had no reason to know it existed, there's an affirmative defense that could be alleged for that. Here though, the affirmative defense was not alleged. But, but the statute does take into consideration impossibility as a reason not to require documents to be produced. But here the statute is, if it's a performance review or a document related to performance or about a grievance, those are the only two categories in the, you know, in the personnel file requirement. Now, it used to be a lot bigger, but now it's just those two documents. And Gil, we're talking about actual performance reviews that just were not produced. Can I ask you, Kai, you're repeating yourself, so I don't mind interrupting you. How was she prejudiced? Is there any, was there any real prejudice? And was this request, and maybe I should know the answer, but it's not in my head right now. Was it requested as part of her discovery or, or for the, you know, do give me the chronological frame. But our first question is, how was she prejudiced? Okay, well, it might be better if I answer your second question first. The personnel file and payroll files are things that are requested before lawsuits even filed. They're documents that an employer has to produce that allows their attorney or the person to evaluate the claims in order to decide whether or not they're going to pursue the claims. Here, we requested the personnel and payroll file. We didn't receive the performance reviews. It wasn't until after the lawsuit was filed and through discovery that we actually eventually got them. Yeah, but you weren't prejudiced because you went ahead and filed a lawsuit anyway. I'm just trying to understand, you know, if I were a juror and I was evaluating damages, is this a liquidated damage claim or is this an actual damage claim? This is a statutory damage claim. The damage is $750. The damage is $150. $750. $750. Yes, those are the damages, $750. He claims that you're going to ask for a small fortune in legal fees. I'm pretty sure Judge Wu won't give me a small fortune just on that claim. I don't know what I'll ask for it because I haven't evaluated it yet, but I'm pretty sure Wu won't give me that much for that limited claim. Now, I was... But you had some issues you appealed. Did you want to address them? Yes, I would like to get that now. So, our position in this case, this is really an interference case. Now, we filed a complaint in Superior Court. It was removed to the district court. Our complaint alleged retaliation claims for taking leave. Our complaint also alleged numerous specific allegations of examples of interference with leave. However, our complaint never stated the word interference. Now, ultimately, we did file a motion for summary judgment based on the interference claims. It was denied. We saw an interlocutory appeal. It was denied. And eventually, the court said we cannot present those issues to the judge. Counsel, yeah, real quick. Before you did your motion for summary judgment, your supplemental... So, first, you filed a complaint, and then you filed a motion for summary judgment. But it got all caught up in this thing about Chipotle, where Chipotle had agreed to summary. But then you didn't, and then the district court let them withdraw that. But then you had proposed jury instructions. Did you propose in your proposed jury instructions an interference claim jury instruction? Well, there was two sets of jury instructions. The first set of jury instructions that we put together, we did include it. Then, after the court ruled on the interlocutory appeal, we specifically asked the court to resolve, can we pursue this at trial? And the court ruled no. When you say you did include it, what did you actually ask for? Because I mean, look, I actually had my clerk look at this carefully. Because I did not see, or we did not see, where you actually proposed an interference claim jury instruction. Well, we did. In fact, and we used very similar instructions. But the difference was, instead of using a substantial motivating factor, there was the negative factor test, which is the standard for... So, as I understand, there was a jury instruction about, that was titled, discrimination due to plaintiffs taking pregnancy disability leave. And that has six factors, correct? Are you, does that make sense to you? Or is that fine? Yes. And you proposed replacing, I think, the fourth factor, where it says, taking or attempting to take eligible medical leave, authorized by law, was a substantial motivating reason. And you proposed to reduce that to this motivating reason, which I understand the difference between substantial, that interference has, it only needs to be a reason, not a substantial reason. But the problem is, is merely that change, if you only made that change in the six-factor jury instruction here, that wouldn't actually, that still wouldn't be a jury instruction for interference, right? That would be a jury, that would be sort of a Frankenstein jury instruction, that would be a discrimination claim, but with an interference part of it, but it'd have a whole bunch of other stuff in it. So, my problem is, I don't see where you ever actually asked for an interference jury instruction. You asked the Frankenstein, one of the other jury instructions, and add the favorable part of an interference claim in there, but you didn't actually ask for an interference jury instruction, I don't think. Point me out where I'm wrong on that. Well, there wasn't a model interference jury instruction for FMLA that we had available to us. So, we actually did create our own interference cause of action, modeled after the CFRA model jury instruction, but using the negative factor test. We also included a bunch of other instructions related to what constitutes interference of what an employer must do in regards to granting FMLA leave, you know, providing notices, and so on and so forth. So, we did provide those instructions, and, but ultimately here, the issue is, we never, the court ruled before we even got to the final jury instruction stage that we can't present this at trial because we didn't have the cause of action or a complaint, and that is simply incorrect. As this court has ruled on several occasions, the retaliation claim... Counselor, I understand your argument on that. I just, the challenge, putting myself in the seat of the district court judge here, is he's got a complaint, I understand that this California law seems kind of odd to me, but says that even though you never used the word interference, and you're talking about retaliation, that you can somehow interpret that if the facts are in there that would support an interpretation claim. So, I understand your argument on that basis. But then, when you propose jury instructions, I'm, it, what you did before you, before you actually asked for summary judgment on your, on your interference claim. If your proposed jury instructions, it didn't seem to me that you actually proposed jury instructions on an interference claim. You did propose to arguably dumb down the substantial motivating reason to something that would be consistent with an interference claim, but it's very difficult, as I read it, to see that there's not much about an interference claim in your proposed jury instructions. But then I think in the course of doing that, you understood, oh my goodness, we don't have an interference claim in here, and so you asked for summary judgment on it. But the judge, which at that point, the judge did not even, isn't it true that in the response to your supplemental motion for summary judgment, at that point, the judge didn't necessarily say that he, you couldn't have an interference claim. The judge just said, I don't know if I see it in here, and he kind of ruled against you on the merits, correct? Well, the answer is no. He ruled against us on one theory of interference, but he didn't even address all the other theories of interference. Right, right, which means that you would get to take those to a trial, but he didn't necessarily say, interference is not even in this case. I mean, he actually addressed one of your three theories, right? And then only later, when you, when you, I think you're like, we need to get this in the, and you sought to amend, did he, did he then say, no, you don't get to amend, you don't get to add an interference claim, it's not in there. And now, you know, that's quite a bit down the road. So I'm trying to figure out what we do with that, because I'm a little sympathetic to the judge here, that it seems like by the time the issue is kind of squarely before the judge, because I don't see how you really presented it very well in your, in your model, in your jury instructions, and in that, and by the time it's finally before the judge, when you move to amend, the judge says, no, no, it's too late. We've already, discovery's over, et cetera. And so it's hard to, you know, hard to think that the judge can't decide something's too late at that. You know, that seems, it's not really abuse of discretion, but I'm just struggling with that. I understand the best argument you have for you is that, is that, hey, under California law, we don't even have to really plead an interference claim. We just get the plea to retaliation claim, as long as the facts are in there. And I think I agree with you that the facts are in there, that we've got an interference claim. So maybe the judge here, if he erred, he erred on the side of like, not seeing that you had an interference claim in, in, in, in, in your original, in your original lawsuit. The problem is, is, is you were so slow to make that clear to him. It seems to me, you didn't make it clear to him in your proposed jury instruction, that by the time you finally make that clear to him, you're, you're so far down the path that he says, I'm not letting you add it. So there seems to be some error on both sides on this, I guess, the judge and you guys. Well, I mean, once we did the, I mean, the motion for summary judgment initially was based on the admissions. Once those were taken out, we then did the supplemental and we, we, the evidence was clear. I mean, do you have the evidence of overwhelming shows interference? I don't think there's really a dispute. As I read it, kind of reading between the lines, the judge had, at that point was thinking, you're just going to, I'm going to take this admission out and you're going to kind of give me back what you gave before and we'll, we'll proceed. But the judge got something, I think, I get the impression the judge was a little surprised and thought, wow, you're adding all this new claims and new stuff. And so that's why the judge was like, I don't even know if you have an interference claim, but I'm going to kind of address it and say, you don't get summary judgment on it. I mean, even, even, even if he doesn't grant summary judgment, if it was in our complaint, we should have the right to present that at trial. And it was in our complaint. So the fact that we were denied that opportunity. It's an argument, but what if you never, the problem is what if you never really asked for an interference jury instruction? Well, I mean, we believe we, we, we believe we did ask for an interference jury instruction. Just to be clear, your argument, I just want to make sure I, because this is really critical for my, for my part, your argument that you asked for an interference jury instruction was your request to amend the discrimination due to plaintiffs taking pregnancy disability leave instruction, the way you asked for it to be amended. Is that, is that what you're referring to, or are you referring to something else? Well, in our initial jury instructions, we actually had the retaliation, two retaliation claims and an additional claim based on interference that was modified, but, but has similar language because interference is similar. It is a, it is essentially a retaliation claim with a different standard. And the standard is the negative factor. In addition, we included a bunch of instructions related to things that constitute interference. Can I just clarify? I really am trying to, so, so when you say your original, was your original the June 6th jury instructions or were there ones before, before that? I don't have them in front of me right now. I do believe they were before that. But when Mr. Cavanaugh speaks, I'll go ahead and look that up for you. There, there was two sets of, there was two sets of jury instructions. Is that? Yes. We initially, we initially prepared them before the summary judgments. And then after the summary judgments, there was a set, another set, and then there was the final set. The court, basically, pared down and almost wrote themselves, wrote itself. And when you say before summary judgment, just to be clear, before the supplemental motion for summary judgment or before the original motion? If I remember correctly, the deadline was before the supplemental. So that's when it was filed. Yeah. Okay. So I think I'm talking about the first set of jury, cause I, I've got June 6th as the first set and then the motion for supplement, it was June 25th. So that doesn't leave a lot of time. So I, uh, I think I'm talking about your first set of jury instructions and that I did not see an interference during instruction. I, to be clear, I saw where you tried to modify the jury instruction I've been talking about, but I didn't see a standalone interference, interference claim during instruction. That was our intent was, was to make clear that it was the interference. Mr. Beck, let me ask you a question. Just assume for a moment that when you filed your complaint in Superior Court, just, and it's based on California law, you had only alleged claim of interference. What would have been all the elements you would have had to allege under your claim? Under, under what, what, um, under FIIA or? Under FIIA. This case was filed in, in, in the Superior Court. All the allegations, all the claims for relief are based on California law. So my question is, let's just assume your claim that you wanted to pursue under California law is a claim of interference under various rights. What would have been the elements of such a claim? Well, the elements is requested leave or was eligible for leave, was denied the leave and the, the denial was a negative factor in determination. Those are basically the elements. So why is it, why didn't you just plead that claim rather than all these other claims? Pregnancy discrimination, wrongful termination, failure to accommodate, failure to prevent disability, failure to engage in interacting process. If I was associated with this firm at the time and I drafted it, I might have done it a little differently. Unfortunately, I wasn't, I don't know the, the, the entire reason behind it. I do think the interact or the interactive process and the reasonable accommodation claims are still valid, but I also think there still was a valid discrimination potential claim here too. So ultimately the claim, each of the claims that were alleged do have value. And depending on the facts, how they played out, one might've had more merit than the other. I mean, we didn't know all the facts going into it. It sounds like the way you characterize an interference claim under California law, and I haven't, you know, I'm no expert in under California law, but it seems like a simple interference claim would be your best shot. And yet you didn't, as the judge said several times, word interference is not even mentioned in the complaint. This is not, this is not a California law case. This is an FMLA case. No, no, no. It's a California law case. Well, I mean, the leave grant... All the instructions, all the instructions that were given were based on California law. Well, I mean, FMLA leave was, was part of the instructions as well. FMLA is federal. I don't know. The way I read the complaint, which was never amended, the case was, the claims were based on California law. Well, the complaint alleges defendant's actions herein violate without limitation, the California Fair Employment and Housing Act, Title VII, Federal Pregnancy Discrimination Act, and the Family and Medical Leave Act, 29 U.S.C. 2601. I don't know. The claim just seemed to have been confused as far as I can tell. Here, one of the issues in this case was Chipotle granted leave and only designated the FMLA leave. Now, we believe the reason is Chipotle wasn't located in California. They had a nationwide, you know, central office, and FMLA is nationwide. Here, our big issue is she should have been granted pregnancy disability leave, which allows more than 12 weeks of leave. Here, Chipotle only granted FMLA leave, so we basically sued under all of the correct theories. Now, counsel, I, I hear you on that. Let me, let me... Judge Pius, I think, is hitting on something that is my big problem with this, and that's it seems like California is very generous and that they let you sort of plead a, in your complaint, they let you plead a interference claim without really using the word interference. Seems kind of odd to me, but they let you do it without using the word interference. You just got to basically plead a retaliation claim and have the facts in there. So, fine. I guess that's, that's the law. But my problem, my difficulty with this is it seems like, notwithstanding that, you have to sort of elect your remedy at some point to tell the judge. Otherwise, what happens is you go through the whole case, the district court judge, thinks you're, you know, district court judge has to, you know, doesn't necessarily know that you're talking about an interference claim because you haven't used that word. And you go all the way along, you get all the way down with discovery, and then you say, oh, we want to add an interference claim because you said you're not even sure an interference claim is in here. And I have some sympathy for a district court judge in this circumstance. I understand the law is you complete an interference claim the way you did, but I have a lot of sympathy for a judge who says, you know, and as Judge Pius said, an interference claim, as I see it under Moore v. Regents, an interference claim is two things, boy's entitlement to leave rights and your interference with those rights. And as I see it, when you were providing an instruction, you were trying to change the instruction or Frankenstein the instruction by dumbing down a portion of it to match an interference claim,  and so the problem with that is, are you just allowed to go through the whole case until it's too late? And then you essentially get a second bite at the apple to present your interference claim. I understand that's a problem, I think. Here, the underlying facts are the same, though. It's the discrimination retaliation claims and the interference, the facts that establish them don't change. It's just the standard in which it is applied to it. To me, the jury instruction was an important time to communicate to the judge, since apparently under California law, you don't have to communicate it at the complaint time. There has to be some time when the judge is told, hey, we want to go on an interference theory. And it seems like if you didn't do that at the jury instruction phase, how else is the judge supposed to know until you're way past discovery, you're past summary judgment, which is when you actually ask to amend it. Well, we asked to amend it because summary judgment was denied and we wanted to make sure that it was presented to the jury. Now, again, our position is always the complaint establishes interference. And it's not under California law, by the way. I mean, the authority we're citing, McCalder and Lew are Ninth Circuit cases dealing with California law and FMLA law. Well, the complaint is, as I read your complaint, your first cause of action is pregnancy discrimination and wrongful termination. Yeehaw. Wrongful violation of public policy. That's California law. Failure to accommodate. It's all under California law. Let me ask you, we've gone way over time, but I do have one question. In the California statutes, do they use the statutes, do the statutes use the term interference? FMLA and California statutes. No, I'm not asking, forget FMLA. There's a separate provision in FMLA about interference. I'm asking you, under the California statutory employment statutes that we're dealing with here, the employment discrimination statute, the separate California Family Leave Act, and there's one other one. There's three. Is there a specific reference to interference in any of those statutes? The language it uses is something along the lines of violating the rights. I don't believe they actually use interference. But in FMLA, in the federal statute, there is a separate provision that talks about interference. Isn't that right? That is correct. If I remember correctly. Okay. That is correct. Look, we've gone way over, and I think we need to move. You're proposing council a few minutes for rebuttal on this point. Thank you, Your Honor. Thank you, Your Honor. Thank you. I appreciate it. And I think we've hit on now the crux of the problem here is, despite the arguments that are coming out now, it's clear that from the outset, this case was definitely not an FMLA interference case. As Judge Paez correctly pointed out, every one of the claims is explicitly based on California, either statutory law or common law. I know council is trying to say that FMLA interference should somehow be shoehorned into that second cause of action. But the second cause of action is a California common law claim for wrongful termination violation of public policy. And that's exactly why, as Judge Van Dyke pointed out, in June of 2018, the proposed jury instruction that Ms. Cortez proposed was based on KC-2430, which is the form instruction for wrongful termination violation of public policy. Was that the first? I mean, you were talking about that was the first, June 6th? Yes, Your Honor. All right. Right before Ms. Cortez moved for summary judgment on June 6th, she filed, there were joint proposed jury instructions, but something she tried to change that we didn't agree to was to take that wrongful termination instruction and only change the causation from substantial motivating reason to motivating reason. Otherwise, it tracked the wrongful termination instruction. Yeah, and real quick, my understanding is that's not a California interference claim jury instruction. Is there any case that you're aware of that they would have that jury instruction for a California interference claim? And that's another distinction that Judge Pais was hitting on. There isn't a claim for interference per se for either the California Family Rights Act or the Pregnancy Disability Law Leave. What there are under the California Family Rights Act, there are claims for violation and there are claims for retaliation. And there are KC instructions on those, which Ms. Cortez appended to her answer reply brief. And the correct California law KC instruction for the situation that Ms. Cortez is describing is KC 2620, which again is appended to her brief. And that is for retaliation in violation of the CFRA, the California Family Rights Act. And the causation element of that requires the taking or requesting of leave under California law to be a substantial motivating reason for the termination or the other adverse employment action. So even if this were a California state law claim for interference, the instruction would have been very similar to the instruction that was actually given. And Mr. Bechdel can only get to where he's going if he can convince us that this is somehow an FMLA interference claim. And that it most certainly is not. There's nothing about this complaint that says that any claim is being made under any federal law. So the one thing I look for on this very point was to see if the district court judge filed a pretrial conference order delineating the specific claims that were going to be tried. I didn't see a pretrial conference order delineating the claims. But I did find the plaintiff's memorandum of contentions of law and fact that were filed. And in there, it's tailored specifically to the claims that are raised in the complaint. Right, I don't believe that the court issued a pretrial order on the claims to be tried. I believe just the parties submitted their independent memos of contention. The district court did point out when it denied the motion for leave to amend, the district did point out in the hearing transcript, which I believe is in the record, that part of the reason it was denying leave to amend was because in the 26F report at the very beginning of the case, plaintiff gave no notice that it was making any sort of interference claim, especially not an interference claim under federal law. So all these arguments about whether or not interference was part of the case or not, really all go back to the judge's decision denying leave to amend. And that is an order that is judged on the abuse of discretion standard here. And as Judge Van Dyke pointed out, it just was not an abuse of discretion here to deny leave to amend after the district was closed and after some of the judgment had been denied and so closed the district. All right, I think we have plenty of argument on this case. We thank you very much for your arguments this morning. And with that, we're going to submit the case for decision. Thank you. Thank you, Your Honors. Thank you, Your Honor.
judges: Paez, Korman, Vandyke